The Honorable Court, all rise! The Honorable United States Court of Appeals in the First Circuit is now in session. All persons having any business before this Honorable Court may draw near, give their attendance, and they shall be heard. God save the United States of America and this Honorable Court. Good morning. Please be seated. Court is in session. Today's cases will be called as previously announced, and the times will be as allotted to counsel. The first case today is No. 21-1758, United States v. Damon Fagan. At this time, Attorney McCarthy, if you'd come to the podium and introduce yourself on the record to begin. Thank you. May it please the Court, Noreen McCarthy on behalf of Mr. Fagan. A few weeks ago, I was right in this area attending the training that this Court put on at the Seaport Hotel, which was excellent. And one of the speakers put a big picture up on the screen that was a cartoon, a drawing. And it said, the caption read, You look like the sketch of someone about to commit a crime. So make no mistake about it, that is what this case is about. At 1057 on January 6th, Trooper Darcy saw someone he thought was engaged in criminal conduct based solely on how he looked, on the fact that he was black. That initial presumption and bias colored the rest of his conduct that night. And it began with him running the license plates on that car for no reason whatsoever. And then trailing him for the next three and a half hours, three and a half minutes, I'm sorry, simply because Mr. Fagan is black. There was no, he had no other intel, as he told his colleague later that night. Now we believe it was reversible error for the Court to disregard all of that information. And in fact, in footnote four, the Court says, I find it immaterial to my analysis of whether Darcy was credible that he began trailing him at the toll booth. The District Court accepted that your client had made an unsafe lane change. Well, I'm not sure that it did, because in the decision, the Court said, it said in its initial decision that the video was not definitive either way. But then the Court said that it didn't contradict what the officer said. Well, it's interesting the way it said that, because first it says it was not definitive either way as to whether there was a traffic violation. And then it said in its written opinion, I am reaffirming that decision, and it said, it appeared that the lane change was abrupt, but I cannot tell the distance between those two cars. And when you take those findings of the Court, the only conclusion is that the video the Court found, the video did not show a traffic violation or the Court would have said that. Although it said the video did not contradict Trooper Darcy, it also said the video was not definitive either way as to whether there was a traffic violation. In other words, he couldn't tell from the video that there was a traffic violation. So if the officer believed that there was a traffic violation, isn't that enough? Well, no. The officer has to have a reasonable belief that there was a traffic violation. And in this case, as stated especially in the amicus brief, the only thing we had, once the Court made that finding that it could not determine either way from the video, then we have to take the only objective evidence is that there was no traffic violation. And that Court's finding was corroborated by other things in the video, such as the trucker not braking, the trucker not blowing a torn, the trucker not swerving. Certainly there was no almost crash as the Trooper Darcy claimed there had been. So what we are left with, as you say, is Trooper Darcy's testimony that he believed there was a traffic violation. So if the Court found that to be credible. Right. The Court said that it found that to be credible. But the Court did not explain and did not take into consideration the pattern of conduct that had already been demonstrated by that point, that Darcy's conduct is that he engages... I'm sorry, Counsel, before we get into that, even if we don't question the credibility of the officer. So our standard of review for articulable suspicion is de novo, I take it. There's no question about that. Right. All right. So leaving aside some of the words that he may have used, such as safe, too close, abrupt, etc., it's not uncommon, I think, for police officers to give estimates of the distance between vehicles. They're pretty adept at that. Was there any of that kind of raw fact testimony given by Trooper Darcy? No, there wasn't, actually. Trooper Darcy said he had no idea what the distance was between those vehicles, especially when he was behind the truck and Mr. Fagan actually made the lane change. He said when he put on his lights and he moved into the passing lane, he said by the time he saw the car, there was three to four car lanes between them. And so the only evidence we have of whether this was an unsafe lane change is his own testimony. Of course, there's no speedometer checking on this or anything like that. His own testimony that by the time he saw him, he was three to four car lanes in front of the truck. There's been no evidence that he was speeding, Mr. Fagan was speeding in any way. So we can presume that the only evidence we have is that when he made that lane change, he was three to four car lanes. And that clearly is not an unsafe. And I think what's really important in this case is to look at the Boyd decision that we cited because the Boyd decision took identical facts to this and said, you know, the government could have found out how fast he was speeding and chose not to do that. And so that's the evidence that we have. And all of the objective evidence in this case is that this was not an almost crash. We understand that the credibility determination is difficult to overcome, but we don't think we even have to get to that. Although we do believe that Mr. Darcy has a history and pattern of engaging in conduct such as this, tracking and targeting black motorists on I-95, stopping them for no reason, and then lying about it. That's a demonstrated pattern at this point. We believe that the district court erred in not taking that into account when it issued its decision on credibility. When the court said, okay, I got all that objective evidence, but I'm going to believe this trooper, and then failed to consider any of that information that was before it. Why do you say that the court failed to consider it? It admitted the testimony and took evidence. It took evidence, but for example, when it was proven that Trooper Darcy lied about when he first saw Mr. Fagan, and then in fact he first saw him at the toll booth and started tracking him then, I believe it's footnote four, the court says that information is not material to my analysis. We think it was completely material to the bias and pattern of conduct that went to his credibility. We think that the court misapplied the Wren decision in this case, and I'll tell you why. Because the court relied heavily on Wren, which says, of course, that the subjective state of mind of the officer is not relevant to a Fourth Amendment analysis. But the court said in an ordinary case it's not relevant. And I have to say, I researched as many cases as I could, and none of them that I found were similar to this except for the Boyd case and a few others that were in Maine, where we contested that there had actually been any traffic violation and where it hung solely on the credibility of an extremely biased trooper, which the court did not properly factor into and did not explain how that very biased trooper's testimony, which was shown to be incredible time and time again, overcame all this other objective evidence in the record, which it was required to look at. What were the court's credibility findings based on? The court mentions three things. It says that when Trooper Darcy first pulled Mr. Fagan over, he told him that the lane change had been unsafe and that he had not issued his blinker. We take issue with that. In fact, Mr. Trooper Darcy did not say that. He said, you cut off that truck. You didn't put your blinker on. He said nothing about the distance between the two. He said nothing about, you know, you didn't, when he testified, he said, well, I thought he just didn't go far enough on the highway before he switched back over to the lane. That was his sole reason for saying it was unsafe. He said cut off. That normally means that you moved in too soon. If he had passed him by 20 car lengths, the officer never would have said he cut off the truck. And then the officer probably would have said that you didn't move back into the lane as soon as practicable, which was the other requirement under Maine law. And then he also referred to the blinker not being turned on before he moved, which can be, is evidence under Maine law of a lack of safety. You're not required to put on the blinker. It's not an automatic violation, but it is evidence. And he cited the fact that there were no other cars, so there was no need to pull in where he pulled in. And, you know, it's interesting because in the Boyd case, they took those exact same facts and said there were no other cars on the highway, so where was the danger here? And so we can. Yes, but if we're talking about credibility, if the trooper said you didn't turn your blinker on, does the video corroborate that? The video corroborates that Mr. Fagan's front right tire had crossed the white line, and then he put his blinker on. So he did use his blinker on. And, in fact, when he stops him and Mr. Fagan. So is the suggestion that the trooper was lying about the blinker or telling the truth about the blinker? I think the blinker is irrelevant, actually, because when he gets to trial and he has learned in the meantime that that main law does not require the use of a blinker, then he says, well, in fact, I thought he could have gone a little bit farther up the highway before he switched over. But as to credibility, which way does the video cut? The video. On the blinker. On the blinker, it shows that he did, in fact, use the blinker, but simply not before he put his tire over that white, his front right tire, before that crossed the line. So he did use it. He absolutely used it. What was the trooper's testimony about the blinker? I think by the time of the hearing when they realized that that was not a violation of main law, they sort of avoided that and there wasn't very much testimony about that. What does his police report say? I think he does say that. I think he mentions the blinker. That he doesn't put the blinker on? Yes, and, in fact, he explains it to Mr. No question, that was the focus of the stop, and that's why this is problematic for them, because that was, in fact, the focus of the stop. Mr. Fagan says, well, what do you mean? What did I do? And then he goes on to explain, oh, your heart was in the right place, but you just didn't put your blinker on soon enough. Your tire had already crossed the line. He says nothing about you crossed into the lane too soon or you didn't leave enough space, nothing like that came up. But as to the blinker, is there anything that he said about the blinker that you say is untrue? No, it just was not a violation of main law. But it was corroborated by the video, what he said was corroborated. What he said was corroborated by the video. What was not corroborated by the video is what he testified to during the hearing and what the court relied upon. That is not corroborated by the video. It's not corroborated by the video that there was an almost crash. That is an outright lie. There's no question about that. There was no almost crash. Was that his testimony, almost crash? Yes. Yes. Yes. It was almost crash. I thought there could have been an almost crash had he had to put on his brakes for some reason. I mean, this is completely pure speculation. This was after the fact. Let's make up a reason once we realize that main law does not require a blinker. He did not give that reason at the time of the stop. Which lane was the trooper in as he was observing this? He was directly behind Mr. Fagan. So we had the truck, we had Mr. Fagan, and we had the trooper directly behind him. And then Mr. Fagan puts on his blinker properly, switches to the passing lane, as I put in my brief, I took a lot of time looking at that video, four to five seconds, goes past the truck. Which lane was the trooper in at that point? The trooper was still behind the truck. He hadn't activated his lights. Mr. Fagan gets in front of the truck, puts on his blinker, his front right tire crosses over the line, he puts on his blinker and makes the rest of the transfer. And that took four to five seconds. Then Trooper Darcy put on his lights and then pulled him over. Let me take you back to your opening point on whether Judge Hornby considered the racial bias of this officer in assessing his credibility. When I look at page six of the judge's decision, where he's addressing credibility and Darcy's testimony, he says, So in making my determination, I consider Darcy's text messaging before the stop, the timing of his inquiry, his racially charged remarks in the August 2019, and the excerpted statement he made in April 2021, but only as they bear on whether to believe that Darcy saw Fagan. So it seems to me that Judge Hornby plainly did consider the racist comments by Darcy in deciding whether or not to believe Darcy's testimony concerning the facts of the stop. How do you explain, how does that jive with your explanation that he didn't? I think that was lip service that he gave that. But aside from that, Well, we don't call the decision of a district court judge lip service when he says he considered something and you tell us he didn't consider it. The problem is he didn't explain how the other evidence, the other objective evidence in the case taken with that. He didn't explain on the record how those factors, how those played into his credibility determination. So do I understand the new position is not that the judge failed to consider those comments in assessing credibility, but that he did consider it, but he didn't explain it enough. He didn't explain it, and he didn't also consider the pattern of conduct by Trooper Darcy in stopping black motorists. For example, when, if I might answer, I know I'm getting close to it. For example, when, during cross-examination at the very end, when the defense attorney wanted to ask him about that prior stop that same night, 25 minutes earlier, the court would not allow him to ask whether or not that driver was black. And clearly the defense attorney had information that the driver was black, that he pulled him over after following him from the toll booth, called the K-9, and then had to let him go without even a traffic ticket. This is one instance of this pattern of conduct. And then we have these others, and those are the things that the court would not allow them to explore, to discover, and to question, and those were highly relevant. And they were objective facts that were highly relevant to the court's determination of credibility. How would those have been relevant if Judge Hornby had already decided in his own mind, as it appeared here, that Darcy was racist? Because it showed, it was further information and evidence to show how biased he was, and bias is always relevant to credibility. That's what was not allowed to be fully discovered in this case. Trooper Darcy's bias to lie about his reasons for stopping this black motorist, that was what was precluded. That's what we think was reversible error. When they refused to allow full exploration as to the bias of Trooper Darcy, and we don't believe that the court gave full credence to that. The court dismissed the evidence like that, and then dismissed objective evidence, based on speculation that maybe this truck driver was dozing at the wheel, where he had no evidence for that. And so, on the one hand, he is dismissing the objective evidence in the case based on speculation, and then saying that Darcy is credible, while not allowing the defense to fully explore any bias that Trooper Darcy would have had, which had been well documented by that time, and prohibiting discovery in that respect. And I believe, but correct me if I'm wrong, you have not advanced any equal protection argument in this case. We don't think that this is, we agree, this is not an equal protection. This is not a vehicle for it. Right, it is not. It goes to the credibility, it goes to bias, it goes to motivation, it goes to whether or not he was lying about his own subjective opinion, that maybe it could have been more safe. In the Boyd decision, it takes identical main language in the statute about, could have, you know, has to return as reasonably practical, as soon as reasonably practical. And says, you know, the legislature did not expect perfection here. And so we have statutes that say reasonably safe, not perfected. And so, on this record, can we really say that this was not a reasonably safe, and it's objective standard when we're looking at it now. Thank you, Ms. McCarthy. Do you have any more questions? Has the investigation been completed as far as Trooper Darcy is concerned? I believe so. I don't know for sure. You mean by the professional responsibility? Yes. I do not know for sure. But I believe it may have been, yeah. Okay. Yeah. Thank you. Thank you, Ms. McCarthy. Thank you. At this time, would Attorney Block introduce himself on the record to begin? Good morning, Your Honors. May it please the Court, I'm Benjamin Block on behalf of the United States. I am not here to defend Trooper Darcy's statements in the Walker case. I am here to defend the District Court's reasonable fact-finding and correct application of the doctrinal law as it relates to this case. Viewing the facts in the light most favorable to suppression, as the Court must, and giving appropriate deference to the District Court's credibility findings, here, this Court should affirm. Counsel, when you take a look at that film, it seems to belied the story that Trooper Darcy told. I wouldn't go that far. I would say, as the District Court found, that there were aspects of the video that corroborated what Trooper Darcy had to say. And there are aspects of the video that didn't. Could you just share with the Court what part you thought corroborated something? Yes. Certainly Trooper Darcy's assessment that Mr. Fagan had already entered the right-hand lane before putting on his blinker was corroborated by the video. I think the District Court's finding that the initial move back into the right-hand lane was abrupt is corroborated by the video. And what's inconclusive is the person. What on the video shows something abrupt? I think, in my view, and certainly this is a factual finding that... Well, is abrupt a factual finding or is that a legal conclusion? I believe that's a factual finding, Your Honor. So unsafe would be the legal? Correct. Well, that there was reasonable suspicion that an unsafe lane change had been made is a legal conclusion. But the factual finding that the move was abrupt is a factual... That's a factual finding. And even if that video could be interpreted in multiple ways, it can't be thoroughly erroneous for the District Court to have chosen between two competing interpretations of the video. If there are two? If there are two. I think this issue of the District Court's assessment of Trooper Darcy's bias is really critical to the credibility finding that the District Court made. And I want to push back on the contention, both in the amicus brief and by Fagan, that the District Court failed entirely to take into account the evidence of Trooper Darcy's bias. To the contrary, the District Court... Well, was the evidence excluded, properly excluded, in your opinion? The biased evidence they were seeking to introduce? Well, a substantial amount of biased evidence did come in. The evidence about his statements in the Walker case came in. The evidence regarding the timing of when he ran the plate and the fact that it's likely that he picked up the car at the toll plaza. The fact that he texted the canine officer earlier in the evening that he was on the hunt. All of that evidence which showed potential bias by Trooper Darcy was admitted. The only thing that was excluded was testimony regarding other stops, which go to the selective enforcement claim that was never brought. Mr. Fagan never filed a motion to dismiss based on selective enforcement. Why wouldn't that have been additional evidence of bias? Or is there a certain limit to how much bias evidence? I think in the District Court's ruling, it could be considered cumulative in the fact that the District Court drew every possible adverse inference against Darcy's motivation that it could. It found that he probably picked Mr. Fagan's car up at the toll plaza. It assumed that he used racial criteria in choosing to follow Mr. Fagan's vehicle. So once you're at the point where the District Court is already operating under the assumption that there were racial motivations in the trooper's actions, additional evidence regarding whether he had acted in a racially motivated manner earlier in the evening is cumulative. It doesn't add any more to the analysis. I have some difficulty understanding how we deal with the officer's testimony that the move was unsafe. We're supposed to ask ourselves, what would an objectively reasonable officer conclude in the situation? And it seems we attribute to that officer all of the sensory inputs that the actual officer had. But I wouldn't think we would attribute to the objective hypothetical officer the subjective evaluations of the actual officer. And I'm wondering whether unsafe is a subjective evaluation that is actually the conclusion. And what we should be looking for is not whether he was credible or not in saying it was unsafe, but rather in the facts observed by him that would have been seen by a reasonable officer had led to a conclusion that there was probable cause. Right. I think that's a fair question and a fair way of looking at it. The District Court, I think, properly assessed Trooper Darcy's credibility in the sense that he specifically found that Trooper Darcy was not a hypothetical reasonable officer. And notwithstanding that fact, still found the officer's testimony as to the reasons why that particular maneuver was unsafe to be credible. I think the Court is correct that at the end of the day, the question is, is there evidence of a reasonable articulable suspicion that an unsafe traffic maneuver took place? And I think that the record supports that in that the failure to use a blinker while itself not a separate violation of main law is a factor that's relevant for consideration in whether or not the lane change was unsafe. So when we picture the objective reasonable officer, we've got that person, him or her, here. What information do we assume that officer had in this case? I assume the blinker not going until the turn started. There were no other cars on the highway. It was night. The lights on the truck didn't start. There's no evidence the truck slowed down when the car moved in front of it. Those are all external observations that was made by this officer, so we assume the objective officer has it. Is there anything else we attribute to that officer? I think it's also fair to infer from the fact that in the time that Mr. Fagan was passing this truck, which means that his car was going faster than the truck was, and in the time that it took the police officer to come out from behind the truck and himself pass the truck, by that point, Mr. Fagan's vehicle was three to four car lengths in front. Where do you get that fact from? That's from the officer's testimony. Three to four car lengths? Yes, that at the time that the trooper reached a point next to the truck when he could see the distance of Mr. Fagan's car, it was three to four car lengths, which suggests that the move occurred before that and that it was actually closer in distance at the time of the actual turn. So I think those are the objective. So that cuts two ways. One, the fact that he was going faster actually suggests the move was safer because you want to be accelerating when you're passing another car. Obviously, you don't want to be slowing down, but you're saying it also cuts the other way because if he was going faster, unless he braked, then that would suggest that by the time the officer saw him, he would have been closer at an earlier point in time. Correct. Again, these are the types of minute factual determinations that are really a core competency of the district court. Here, the district court made its factual finding that based on the totality of the circumstances, a reasonable officer in Trooper Darcy's situation could have had reasonable suspicion to believe that that lane change was unsafe. And it's very difficult at this point to define that that was clearly erroneous on the part of the district court. That what was clearly erroneous? That the factual findings regarding the abruptness of the lane change, the failure to use the blinker in a timely fashion, and the trooper's perception that it was unsafe all combined to create reasonable suspicion of an unsafe lane change. So the fact that bias may have clouded his perception is irrelevant in your opinion? It's not irrelevant. It was taken wholly into account by the district court. And that's where the difficulty lies in Mr. Fagan's attempt to reverse this suppression order, is that the district court was fully aware of these facts, took all of them into account through every possible adverse inference against Trooper Darcy, and notwithstanding that fact, found no basis for suppression. And so in order to find that that credibility finding was misplaced, this court has to conclude that not only did Judge Horn be... It's not that he didn't take those factors into account, which could form the basis for clear error, but that he didn't weigh them appropriately. That he was aware of these facts, he considered them, and that his weighing of those relevant factors was clearly erroneous. And I think that's inconsistent with this court's doctrine regarding... Weighing those facts for the purpose of determining whether there was reasonable suspicion? I'm sorry, could you repeat the question? Weighing those facts to what end? If it's weighing the facts for purposes of determining whether there's reasonable suspicion, that's de novo review for us. There's no deference owed. No, weighing those facts as to Trooper Darcy's credibility, and then taking that credibility finding, certainly you can reach a de novo conclusion as to whether or not the reasonable suspicion existed. Might I ask whether the record reflects whether your office is still prosecuting cases in which they present Officer Darcy as a witness? To my knowledge, there are no further pending cases in which Darcy, Trooper Darcy, is a witness. There were several other cases cited by Mr. Fabian in his brief. All of those cases have been resolved either through dismissals or guilty pleas. And to Your Honor's question about whether or not the internal investigation was completed, that investigation was completed. It found no pattern of misconduct by Trooper Darcy, although I think a fair criticism is that the Maine State Police's record-keeping with respect to the race of individual stopped for traffic violations may not be as comprehensive as we would like. But that internal investigation was completed, and those results were turned over to Mr. Fabian, I believe shortly after the second suppression hearing. And there was an opportunity for Mr. Fabian to bring any facts from that that he viewed as relevant to the district court's attention. And so that's the state of the record on that. So if the court has no further questions, we would ask them to affirm.